

**SIGNED this 23rd day of January, 2012.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-11507-CAG |
| | § | |
| CRESCENT RESOURCES, LLC, ET AL., | § | |
| | § | CHAPTER 11 |
| Debtors. | § | |

| | | |
|---|---|---|
| CRESCENT RESOURCES LITIGATION | § | |
| TRUST, BY AND THROUGH DAN | § | |
| BENSIMON, TRUSTEE, | § | |
|     Plaintiff, | § | |
| | § | ADV. NO. 11-01082- CAG |
| v. | § | |
| | § | |
| NEXEN PRUET, LLC F/K/A NEXSEN | § | |
| PRUET JACOBS & POLLARD, LLC | § | |
| | § | |
|     Defendant. | § | |

### MEMORANDUM OPINION AND ORDER GRANTING NEXSEN PRUET'S
### MOTION TO DISMISS

Came on to be considered the above-styled and numbered adversary proceeding and, in particular, the Motion to Dismiss filed September 14, 2011 (docket no. 7), on behalf of

Defendant, Nexsen Pruet, LLC f/k/a Nexsen Pruet Jacobs & Pollard, LLC ("Nexsen Pruet"). The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and it is deemed a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (F), (H), and (O). This matter is referred to this Court under the District's Standing Order of Reference. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

On May 11, 2011, Plaintiff, Crescent Resources Litigation Trust (the "Trust"), filed its Complaint for Avoidance and Recovery of Avoidable Transfers (docket no. 1), alleging that the Debtors, Crescent Resources and their affiliated entities (the "Debtors"),[1] made preferential transfers to Nexsen Pruet in violation of 11 U.S.C. § 547 as well as fraudulent transfers in violation of 11 U.S.C. § 548. On September 14, 2011, Nexsen Pruet filed a Motion to Dismiss (docket no. 7). On October 4, 2011, the Trust filed its Response (docket no. 10). On November 11, 2011, Nexsen Pruet filed its Reply in Support of Motion to Dismiss (docket no. 14). On November 18, 2011, after hearing the arguments of counsel, the Court took the matter under advisement. Having considered the arguments presented and the applicable law, for the reasons stated below, the Court finds that Nexsen Pruet's Motion to Dismiss should be GRANTED.

## BACKGROUND

On June 10, 2009, the Debtors filed a voluntary case under Chapter 11 of the Bankruptcy Code. According to the Trust's Complaint, the Debtors made one or more transfers from their Bank of America bank account to Nexsen Pruet via check or wire transfer on or within ninety days prior to the Petition Date (docket no. 1, at 3, 4). The Trust outlined the details of each of these alleged transfers in a chart, which it attached as an exhibit to its Complaint ("Exhibit B"). With respect to each alleged transfer, Exhibit B lists the invoice date, the invoice amount, and

---

[1] A list of Debtors is attached to the Trust's Complaint as Exhibit A. The Court ordered that the Debtors' cases be consolidated for procedural purposes and jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (docket no. 1, at 3).

2

the invoice number (where available),[2] along with the corresponding payment date and/or bank clear date, the payment amount, and the check or wire number (*id.* at 3, Ex. B.)

According to the Complaint, prior to and after the filing of the petition, the Debtors used a "Cash Management system, which is similar to systems used by other large business enterprises."[3] (*Id.* at 4.) Crescent Resources maintained the primary operating accounts that most of the Debtors and their subsidiaries used for deposits and disbursements; however, certain subsidiaries used their own stand-alone accounts (*id.*). The primary accounts and the stand-alone accounts were all held at Bank of America (*id.*). "From time to time, funds were transferred by Crescent Resources to these accounts, and excess capital was sent from these accounts to Crescent Resources as distributions." (*Id.*)

Expenses were generally paid from one of four primary accounts: (i) a Crescent Resources deposit account, (ii) a Crescent Resources disbursement account, (iii) a LandMar Group deposit account, or (iv) a LandMar Group disbursement account (*id.*). The "Cash Manager" at Crescent Resources oversaw the four primary accounts and determined the upcoming expenses to be paid from these accounts on a daily basis (*id.*). Payments were made either via wire transfer issued from the Crescent Resources deposit account or the LandMar Group deposit account or by paper check issued from the Crescent Resources disbursement account or the LandMar Group disbursement account (*id.*). Amounts paid from the Crescent Resources disbursement account and from the LandMar Group disbursement account were pre-funded prior to such checks being issued (*id.* at 5). Expenses not paid from one of the primary

---

[2] For slightly more than half of the alleged transfers, Exhibit B lists "MULTIPLE INVS" under the "Invoice number" column.

[3] In using the defined term "Cash Management system," the Trust includes a footnote citation to "Docket No. 15." Docket no. 15 in the main bankruptcy case (case no. 09-11507) consists of Debtors' Motion Pursuant to Sections 105(A), 345(B), 363(C) And 364(A) of the Bankruptcy Code for (I) Authority to Continue to Use Existing Cash Management System, (II) Authority To Maintain Existing Bank Accounts and Business Forms, and (III) Waiver of the Requirements of Section 345(B) of the Bankruptcy Code, filed June 10, 2009. This document is not attached to the Complaint.

accounts were paid by check directly from the stand-alone accounts (*id.* at 4-5).

Under the section of the Complaint entitled "Facts Relating to Insolvency," the Trust alleges that the Debtors' Schedules, Statements of Financial Affairs, and Disclosure Statement, along with the declaration of the Debtors' chief financial officer,[4] reflect that the Debtors were "deeply insolvent at all times relevant to the complaint." (*Id.*) The Trust did not attach any of these documents to its Complaint. The Trust further alleges that the Debtors were insolvent "under a number of tests." (*Id.*) "First, they were left with unreasonably small capital to operate their business. Second, they were unable to pay their debts when they became due. Third, they were rendered insolvent because their post-transaction liabilities exceeded their post-transaction assets at a fair valuation." (*Id.* at 5-6.)

Under Count One of the Complaint, the Trust essentially recites verbatim the elements of a § 547 claim for preferential transfer (*id.* at 5). Under Count Two, the Trust brings a fraudulent transfer claim in the alternative, "[t]o the extent that the Transfer(s) were made by Crescent Resources, LLC to the Defendant and there was no antecedent debt." (*Id.* at 7.) The Trust does not specify whether the fraudulent transfer claim is brought under § 548(a)(1)(A) for actual fraud or under § 548(a)(1)(B) for constructive fraud; however, it essentially recites verbatim the elements of a § 548(a)(1)(B) constructive fraudulent transfer claim (*id.*). In particular, with regard to the element of reasonably equivalent value under the statute, the Trust alleges that "[t]he Debtor or Debtors identified on Exhibit B received less than the reasonably equivalent value in exchange for the Transfer(s)." (*Id.*) With regard to the element of insolvency under the statute, in addition to the general allegations contained in the "Facts Relating to Insolvency"

---

[4] In reference to "the declaration of Debtors' chief financial officer," the Trust provides a footnote citation to "Docket No. 22." (*See* docket no. 1, at 5, n.5.) Docket no. 22 of the main bankruptcy case (case no. 09-11507) consists of the Declaration of Kevin H. Lambert in Support of the Debtors' Chapter 11 Petitions and First Day Motions. The Trust did not attach this document to its Complaint. The Complaint does not reference any specific facts provided in the declaration or even a specific page number within the fifty-two- page document.

4

section of the Complaint, the Trust alleges the following:

> The Debtor or Debtors identified on Exhibit B was insolvent on the date of the Transfer(s) or became insolvent as a result of the Transfer(s) or the relevant Debtor was engaged or about to engage in a business or transaction that would leave the relevant Debtor with unreasonably small capital or the relevant Debtor intended to incur or believed it would incur debts beyond its ability to pay as they matured.

(*Id.*)

## PARTIES' CONTENTIONS

In its Motion to Dismiss, Nexsen Pruet contends that neither Count One nor Count Two of the Trust's Complaint meets the plausibility standard required to withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* **Ashcroft v. Iqbal**, 129 S. Ct. 1937 (2009); **Bell Atl. Corp. v. Twombly**, 550 U.S. 544 (2007). Nexsen Pruet argues that, (1) aside from the chart attached as Exhibit B to the Complaint listing all alleged payments made by the Debtors to Nexsen Pruet, the Complaint does not provide any other factual details to support the elements of either a preference claim or a fraudulent transfer claim; and (2) Exhbit B alone is insufficient to satisfy the Trust's pleading burden because it "leaves the Court and Defendant to speculate as to how the information contained therein is relevant to the claims." (Docket no. 7, at 3-4.) According to Nexsen Pruet, the Complaint's "Facts" section merely provides "a cursory background of the Debtors' cash management system and payment system, without referencing the Defendant or stating any specific facts supporting the Trust's case against the Defendant," and the "Causes of Action" section is "even less adequate, as it contains a simple recitation of the elements of the cause of action as legal conclusions without providing any facts or supporting details." (*Id.* at 4.) Over all, Nexsen Pruet asserts that the allegations are conclusory and based upon "naked assertions devoid of further factual enhancement." (*Id.* (citing *Iqbal*, 129 S. Ct. at 1950)). Accordingly, Nexsen Pruet requests that the Court dismiss

5

both counts of the Complaint or, alternatively, require the Trust to replead (*id.* at 5).

In its Response, the Trust argues that, notwithstanding the Supreme Court's rulings in *Iqbal* and *Twombly*, the Federal Rules of Civil Procedure require only "notice" pleading and that "the pleading of specific facts is unnecessary." (Docket no. 10, at 2 (citing **Erickson v. Pardus**, 551 U.S. 89, 93-94 (2007)). In sum, the Trust argues that it provided a "detailed pleading of insolvency" and a "clear pleading of reasonably equivalent value" and that the Complaint is "more than sufficient to state a claim for relief that is plausible on its face." (*Id.* at 9.) In the alternative, should the Court find the Complaint to be insufficiently pleaded, the Trust requests the opportunity to replead in conformity with the Court's ruling (*id.* at 10).[5]

In its Reply, Nexsen Pruet argues that, since the Supreme Court's decisions in *Twombly* and *Iqbal*, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." (Docket no. 14, at 1) (citing **Airport Blvd. Apartments Ltd. v. NE 40 Partners, LP (*In re Partners, LP*)**, 440 B.R. 124, 127 (Bankr. S.D. Tex. 2010)). Moreover, Nexsen Pruet argues that the information in Exhibit B "is insufficient for Defendant to reconcile its internal records or analyze the Trustee's allegations." (*Id.* at 4.) The Reply states:

> Specifically, the Chart is so inadequate that the Defendant is unable to (a) isolate particular invoices that are applicable, (b) determine the debtor entity to which such invoices apply, (c) trace applicable invoices to specific wire transactions between debtor entities and the Defendant, or (d) sort through its internal payment history for services rendered to specific debtor entities.

(*Id.*) In addition, Nexsen Pruet asserts that a 2009 case from the Eastern District of North Carolina sets forth "the appropriate application of *Twombly* and *Iqbal*" to a complaint by the

---

[5] The Trust states in its Response that "[t]he defense also moves to dismiss certain of the individual claims for alleged failure to plead those claims in accordance with FED. R. CIV. P. 9(b), as incorporated herein by FED. R. BANK. P. 7009." (Docket no. 10, at 2.) The Motion to Dismiss does not, however, contain any mention of Rule 9(b). As such, the Court sees no reason to consider the Trust's argument that a Trustee should not be held to the Rule 9(b) standard.

6

trustee alleging preferential and fraudulent transfer actions (*id.* at 3) (citing **Angell v. BER Care, Inc. (In re Caremerica, Inc.)**, 409 B.R. 737, 750 (Bankr. E.D.N.C. 2009)). Nexsen Pruet argues that "the factual allegations in the Complaint, and the exhibit attached thereto, are substantially less robust than those in *Caremerica*." (*Id.* at 4.)

### MOTION TO DISMISS STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint "need only include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" **Hershey v. Energy Transfer Partners, LP**, 610 F.3d 239, 245 (5th Cir. 2010) (quoting FED. R. CIV. P. 8(a)(2)). "'[D]etailed factual allegations' are not required." *Id.* (quoting **Iqbal**, 129 S. Ct. at 1949 (quoting **Twombly**, 550 U.S. at 555)). A court should not accept, however, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." **Hershey**, 610 F.3d at 245-46 (quoting **Iqbal**, 129 S. Ct. at 1949-50). Moreover, the Court "will not strain to find inferences favorable to the plaintiff." **Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.**, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted). Rather, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* Determining the existence of facial plausibility is a "context-specific task" that "requires the court to draw on its judicial experience and common sense." **Iqbal**, 129 S. Ct. at 1950. "A claim for relief is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" **Harold H. Huggins Realty, Inc. v. FNC, Inc.**, 634 F.3d 787, 796 (5th Cir. 2011) (quoting **Iqbal**, 129 S. Ct. at 1949 (quoting **Twombly**, 550 U.S. at 570)). An inference of liability must be at least as plausible as any "obvious alternative explanation." **Iqbal**, 129 S. Ct. at 1950-51 (citing **Twombly**, 550 U.S. at 567). "A claim for relief is implausible on its face when 'the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct.'" ***Harold H. Huggins Realty***, 634 F.3d at 796 (quoting ***Iqbal***, 129 S. Ct. at 1949 (internal citation omitted)).

## ANALYSIS

**I.     The Trust's preferential transfer claim under 11 U.S.C. § 547(b) should be dismissed without prejudice.**

In order to state a claim for a preferential transfer under § 547(b), the Trust must plead that the transfer of an interest in the Debtors' property was:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such a transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>     (A) within 90 days before the date of the filing of the petition; or
>     (B) [] within one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) [such that the] payment enables such creditor to receive more than such creditor would if—
>     (A) the case were a case under Chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

***Hill v. Oria (In re Juliet Homes, LP)***, No. 09-03429, 2011 WL 6817928, at *8-9 (Bankr. S.D. Tex. 2011) (citing 11 U.S.C. § 547(b)).

In the *Caremerica* case cited by Nexsen Pruet, the Chapter 7 trustee sought to avoid and recover certain alleged preferential and fraudulent transfers made by the debtors to BER Care, Inc. and subsequently transferred from BER Care, Inc. to the defendants. ***In re Caremerica***, 409 B.R. at 744. The trustee's second amended complaint contained a list of the total amounts of the preferential and fraudulent transfers alleged to have been received by each defendant. *Id.* Attached to the complaint, the trustee included a bank statement belonging to BER Care, Inc. as well as a chart marked as Exhibit B, which contained "a list of each alleged transfer and included

8

specific amounts, dates, check numbers, payee reference numbers, names of payees, account numbers and account names corresponding to each transfer." *Id.*

In support of their motion to dismiss, the defendants in *Caremerica* argued that the court should adopt the strict pleading standard set out in **In re Valley Media**, 288 B.R. 189 (Bankr. D. Del. 2003). In that case, Judge Walsh of the Delaware Bankruptcy Court held that a complaint to avoid a preferential transfer must identify the nature and amount of each antecedent debt as well as, for each alleged transfer, the date, name of the transferor, name of the transferee, and dollar amount. *Id.* at 192. Three years later, Judge Walsh applied the same standard in **In re Oakwood Homes Corp.**, 340 B.R. 510 (Bankr. D. Del. 2006), finding that a non-insider preference claim was sufficient to withstand a motion to dismiss where the complaint (a) detailed the relationship between the debtors and defendants and explained that many of the debts arose from a loan assumption program, (b) included "exact dates, precise dollar amounts, and in some cases check numbers for each of the transfers," and (c) identified the transferors as the debtors and their affiliates, which the court found operated as a unit with minimal distinctions between debtor and non-debtor entities. **In re Oakwood Homes**, 340 B.R. at 522. In accordance with *Valley Media*, Judge Walsh stopped short of requiring the plaintiff to plead "how factors" such as "how the transfers enabled Defendant to receive more than it would have in a Chapter 7 liquidation" or facts showing "that Plaintiff owed Defendant an antecedent debt," stating that "Rule 8(a) does not contemplate such specificity." *Id.* (citing **Valley Media**, 288 B.R. at 193).

In reaching its decision on the motion to dismiss, the *Caremerica* court thoroughly analyzed the Rule 8(a) pleading standard set out by the Supreme Court in in *Iqbal* and *Twombly*. **In re Caremerica**, 409 B.R. at 745-48. The court then considered the pleading standard set out by *Valley Media* as well as that set out by subsequent conflicting cases, noting that most of the

9

relevant case law was decided prior to *Iqbal* and *Twombly*.[6] The *Caremerica* court acknowledged that "*Valley Media* has been distinguished or ignored by the majority of bankruptcy courts both nationwide as well as in Delaware," but nevertheless determined that "the Supreme Court in *Twombly* and *Iqbal* breathe new life into the pleading requirements implemented in *Valley Media* for § 547 preference claims." *Id.* at 753, n.2.

Based on this premise, the court then proceeded to address each element of a preferential transfer claim in turn. *Id.* at 750. With regard to Exhibit B, the court found that "the information provided in the Table of Transfers, including the names of transferees and the dates and amounts of each transfer, [was] sufficient to plausibly assert that funds were transferred to the Movants" and that, with regard to transfers made within 90 days of the petition date, insolvency was to be presumed. *Id.* at 751 (citing 11 U.S.C. § 547(f)). With regard to the other elements, however, the court applied a standard even more demanding than that of *Valley Media* and *Oakwood Homes*, finding that "in light of the heightened pleading standard expressed in *Iqbal*, the trustee is obligated to support his allegation with facts showing that it is plausible that creditors would receive less than a 100% payout in a liquidation." *Id.* at 754. The court also determined that the trustee is obligated to allege facts surrounding the nature and amount of the antecedent debt. *Id.* In so ruling, the court rejected the trustee's argument that the new pleading requirements impose an undue burden on the trustee.[7]

---

[6] *Id.* at 748-50 (citing **In re Allou Distribs., Inc.**, 387 B.R. 365, 405 (Bankr. E.D.N.Y. 2008) (finding that a preference claim identifying transferor and transferee, check number, date, and amount was sufficient); **In re NM Holdings Co., LLC**, 376 B.R. 194, 204 (Bankr. E.D. Mich. 2007) (finding that a preference claim identifying transferor and transferee, form of transfer, and the total amount of transfers was sufficient to meet Rule 8(a)'s "liberal" pleading requirements); **In re The IT Group, Inc.**, 313 B.R. 370, 373-74 (Bankr. D. Del. 2004) (finding the requirements of *Valley Media* "inappropriate and unnecessarily harsh" and holding that the complaint identifying the amount, date, and number of the transfer "clearly provided fair notice"); **In re Randall's Island Family Golf Ctrs., Inc.**, 290 B.R. 55, 65 (Bankr. S.D.N.Y. 2003) (finding that "a preference complaint may provide a defendant with fair notice of the claim despite the lack of information required by *Valley Media*")).

[7] "[T]he court admits that claims for relief are more difficult to plead sufficiently following *Twombly* and *Iqbal*. However, the trustee is certainly more likely to have access to this information than the antitrust plaintiffs in

At the time when *Caremerica* was decided, "bankruptcy courts were in the early stages of applying *Twombly* [and] *Iqbal* to preference claims, and there were, and continue to be, conflicting rulings. **Tousa Homes, Inc. v. Palm Beach Newspapers (In re Tousa, Inc.)**, 442 B.R. 852, at 853 (Bankr. S.D. Fla. 2010).[8] To date, no court in this circuit has expressly adopted the *Caremerica* standard. This Court will not do so either in this case. That is not to say, however, that the trustee has met his pleading burden simply by including allegations that mirror the language of the fraudulent transfer statute along with a chart such as Exhibit B. In the majority of cases, even in those in which courts rejected the *Valley Media* and *Caremerica* standards as too demanding, the plaintiffs, at a minimum, alleged facts surrounding the nature of the relationship between the debtor and the defendant in order to support the inference of an antecedent debt. For example, in **In re NM Holdings**, 407 B.R. at 243, the ninety-one page complaint contained a "General Allegations" section that included "an extensive recitation of transactions that occurred" between the debtor and the defendants. In **In re C.R. Stone Concrete Contractors**, 434 B.R. at 211-15, the complaint detailed the relationships between the debtor corporation and the defendants as contractors and hired parties in the business of concrete design and installation.

In this case, according to the Trust's Complaint, the Debtors made one or more transfers from their Bank of America bank account to Nexsen Pruet via check or wire transfer on or within

---

*Twombly* or the Pakistani detainee in *Iqbal*. If these claimants were held to a heightened pleading standard, so too can a trustee in bankruptcy." *Id.* at 754. "After all, the trustee has theoretically had all of the books and records of the debtors for up to two years prior to bringing these causes of action, with the full discovery powers of the court through 2004 exams and other means available during that time." *Id.*

[8] *See, e.g.*, **In re C.R. Stone Concrete Contractors, Inc.**, 434 B.R. 208 (Bankr. D. Mass. 2010) (holding that the new standards of *Twombly* and *Iqbal* did not require the court to "apply *In re Valley Media*'s heightened pleading standards"); **Gold v. Winget (In re NM Holdings Co., LLC)**, 407 B.R. 232, 256-57 (Bankr. E.D. Mich. 2009) (determining the "heightened pleading requirements imposed by the *Valley Media* case [are] inconsistent with the liberal notice pleading principles underlying the civil rules" and finding a more liberal standard consistent with *Twombly* ) (internal citations omitted). See also the conflicting cases listed in note 6, *supra*, that were decided pre-*Iqbal*.

ninety days prior to the petition date, June 10, 2009 (docket no. at 3, 4). Thus, the Court will presume Debtors were insolvent at the time the alleged transfers were made. With respect to each transfer, Exhibit B lists the invoice date, the invoice amount, and the invoice number (where available), along with the corresponding payment date and/or bank clear date, the payment amount, and the check or wire number (*id.* at 3, Ex. B). Exhibit B also identifies the transferor as either "Crescent Resources, LLC" or "LandMar Group, LLC" and identifies the transferee as Nexsen Pruet. In accordance with *Valley Media*, *Oakwood Homes*, and in particular *Caremerica*, the content of Exhibit B is sufficient to support the inference that the transfers were made.

Notwithstanding the Court's finding that the Trust has sufficiently pleaded the majority of the elements of a preferential transfer action, the Court finds that the Trust has not sufficiently pleaded the existence of an antecedent debt. By contrast to the cases cited above, including those which espouse even the most lenient of pleading standards, the Trust's Complaint contains no description whatsoever of the Defendant, Nexen Pruet, much less a description of the nature of the relationship between Nexsen Pruet and the Debtors. The Complaint merely contains the conclusory allegation that "[t]he Transfers were made . . . for or on account of an antecedent debt owed by the particular Debtor to the Defendant before such Transfers were made," with no factual allegations to support this contention (*id.* at 6). Without more, the Court is unable to infer the existence of an antecedent debt based on the conclusory allegations presented under Count I of the Complaint.

In sum, while the Trust has alleged adequate factual matter to support the majority of the elements of a § 547 claim, the Complaint as presently pleaded cannot survive a motion to dismiss. Accordingly, with regard to the Trust's claim of preferential transfer under Count One

of the Complaint, the Court finds that Nexsen Pruet's Motion to Dismiss should be GRANTED, and the preferential transfer claim should be DISMISSED without prejudice.

> II. **The Trust's fraudulent transfer claim under 11 U.S.C. § 548(a)(1)(B) should be dismissed without prejudice.**

"Section 548 covers two classes of [fraudulent] transactions: ones in which the debtor intended the transfer to harm or hinder creditors; and ones in which the unfairness stems from a disparity of exchange coupled with the debtor's lack of other assets." 5 COLLIER ON BANKRUPTCY ¶ 548.01 (16th ed. 2011)). "If the fraudulent transfer statute the [plaintiff] want[s] the Court to apply requires intent to defraud, the enhanced pleading requirements of Rule 9(b) apply; if the statute allows for fraudulent transfer without intent to defraud, however, only the general pleading rules of Rule 8(a) must be satisfied." *In re Juliet Homes*, 2011 WL 6817928, at *12 (quoting *E. Poultry Distribs., Inc. v. Yarto Puez*, 2001 WL 34664163, at *2 (N.D. Tex. 2001)). "Rule 9(b) does not apply to claims for avoidance of constructively fraudulent transfers because such claims are not based on actual fraud but instead rely on the debtor's financial condition and the sufficiency of consideration provided by the transferee." *In re Caremerica*, 409 B.R. at 755-56 (citing *In re Derivium Capital, LLC*, 380 B.R. 429, 439 (Bankr. D.S.C. 2006); *In re Verestar, Inc.*, 343 B.R. 444, 459 (Bankr. S.D.N.Y. 2006)). "Rather, § 548(a)(1)(B) claims must satisfy Rule 8(a) and contain a short and plain statement showing entitlement to relief. Under *Iqbal*, it follows that claims to avoid constructively fraudulent transfers must assert factual allegations which show that relief is plausible." *Id.* at 756.

In *Caremerica*, with regard to the trustee's fraudulent transfer claim, the amended complaint alleged that the transferors "received less than reasonably equivalent value in exchange from the defendant for such fraudulent transfer" and that the transferors were "insolvent on the date of each fraudulent transfer or became insolvent as a result of the

13

fraudulent transfer." *Id.* at 756. The court found that the trustee's allegations merely "mirror the elements of § 548(a)(1)(B)" and that the trustee "fails to support such allegations with factual assertions other than dates, amounts, and names of transferees included in Exhibit B." *Id.* The court specifically pointed out that the amended complaint was missing "an identification of the consideration received by each transferor, information as to why the value of such consideration was less than the amount transferred, and facts supporting the debtors' insolvency at the time of the transfer." *Id.* Accordingly, "the trustee's claims based on constructive fraud fail[ed] to meet the Rule 8 pleading standard." *Id.*

In this case, like in *Caremerica*, the Trust's allegations with respect to the fraudulent transfer claim contained in Count Two of the Complaint do no more than mirror the elements of § 548(a)(1)(B) (*see* docket no. 1, at 7). The Trust argues that the Complaint, read in its entirety, contains a "detailed pleading of insolvency" and a "clear pleading of reasonably equivalent value." (Docket no 1 at 9.) Like in *Caremerica*, however, "other than dates, amounts, and names of transferees included in Exhibit B," along with general conclusory allegations of insolvency and reasonably equivalent value, the Trust fails to support its allegations with factual assertions. **In re Caremerica**, 409 B.R. at 756.[9]

First, with regard to insolvency, the Trust alleges that the Debtors' Schedules, Statements of Financial Affairs, and Disclosure Statement, along with the declaration of the Debtors' chief financial officer, reflect that the Debtors were "deeply insolvent at all times relevant to the complaint." (Docket no. 1 at 5.) The Trust did not attach any of these documents to its Complaint nor did it refer the Court to any specific facts provided in these documents that would

---

[9] Unlike in the "Bonus" adversaries for which the Court issued an oral ruling on January 20, 2012, the facts in this case, or lack thereof, do not establish a context from which the Court may infer the nature of the alleged payments. Moreover, in the "Bonus" adversary complaints, the Trust pleaded specific facts relating to the Debtors' liabilities and assets at the time the alleged payments were made.

14

allow the Court to draw a reasonable inference of insolvency. The Trust further alleges that the Debtors were insolvent "under a number of tests" and then proceeds to describe each test, without providing the applicable facts to support a finding of insolvency under any of them (*id.*). Second, with regard to reasonably equivalent value, the Complaint contains only one sentence, which states, "The Debtor or Debtors identified on Exhibit B received less than the reasonably equivalent value in exchange for the Transfer(s)." (Docket no. 1, at 7.) In light of *Iqbal* and *Twombly*, this Court will not accept such "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." See **Hershey**, 610 F.3d at 245-46 (quoting **Iqbal**, 129 S. Ct. at 1949-50).

In sum, the Trust has failed to plead sufficient factual matter to support a plausible claim for relief under either § 547 or § 548. Accordingly, the Court finds that Nexsen Pruet's Motion to Dismiss should be GRANTED, and the Trust's Complaint should be DISMISSED without prejudice as to refiling.

## CONCLUSION

In accordance with the foregoing, it is, therefore,

ORDERED that Nexsen Pruet's Motion to Dismiss the Trust's claim for preferential transfers under 11 U.S.C. § 547(b), contained in Count I of the Complaint, is hereby GRANTED; and it is further

ORDERED that Nexsen Pruet's Motion to Dismiss the Trust's claim for fraudulent transfers under 11 U.S.C. § 548(a)(1), contained in Count II of the Complaint, is hereby GRANTED; and it is further

ORDERED that the Court grants permission for the Trust to replead its claims against Nexsen Pruet under the pleading standards expressed in this order.

# # #